IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DAMIEON B. RASPBERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 1:12-cv-1209-JDT-egb |
| | ) | |
| KENNETH THOMPSON, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Magistrate Judge for a report and recommendation is Defendant's Motion for Summary Judgment [D.E. 47]. Plaintiff has responded in opposition, and Defendant has replied.

## I. FACTUAL BACKGROUND

Plaintiff brought this action alleging that Defendant Kenneth Thompson, who at all times relevant was an investigator with the Henderson County Sheriff's Department, deprived Plaintiff of his Constitutional rights by causing an arrest warrant to be issued without probable cause. (*See generally* 2d Am. Compl., D.E. 30). Plaintiff alleges that his arrest violated his rights under the Fourth Amendment. (2d Am. Compl., D.E. 30 ¶ 14). Plaintiff has also brought Tennessee state law tort claims against Defendant for false arrest, malicious prosecution, and intentional infliction of emotional distress. (2d Am. Compl., D.E. 30 ¶ 17-20).

The facts of this case revolve around a theft of property that occurred on August 20, 2011, at Whitney Overman's residence. At that time, Plaintiff resided with Ms. Overman, who was his girlfriend. (D.E. 30 ¶ 8). The day after the theft, Plaintiff called the Sheriff's Department to report that 40 hydrocodone pills were missing from his and Ms. Overman's residence. (Statement of Undisputed Facts ("SOUF" ¶3). The Sheriff's Department advised Plaintiff that missing medication reports are generally not investigated by the Sheriff's Department. (SOUF ¶ 3).

During that phone call, Plaintiff did not report that Ms. Overman's jewelry had been stolen (SOUF ¶ 3), but Plaintiff and Ms. Overton explain that at that time they were not aware that the jewelry was missing. (Plaintiff's Response to SOUF, Whitney Overman's Dec. ¶ 5).

On August 24, 2011, which was three days after Plaintiff initially reported the theft of hydrocodone, Ms. Overman, reported a theft of jewelry and two bottles of gin to the Sheriff's Department. (SOUF ¶ 4). This report was made from Plaintiff's phone, which they shared. (Plaintiff's Additional Undisputed Facts). According to Ms. Overman, neither she nor Plaintiff were aware of jewelry missing until the 24th of August, and a police report was filed later that same day. (Whitney Overman's Dec. ¶ 5). On the other hand, Defendant maintains that Plaintiff knew the jewelry was missing before that time.

In recalling the events leading up to the theft, Ms. Overman indicated that on August 20, 2011, while she and Plaintiff were away from their residence, she received a phone call from two friends, Holly Jo Graves and Danny Kelly. (SOUF ¶ 4). During the telephone conversation, Ms. Graves advised Ms. Overman that she and Mr. Kelly were at Ms. Overman's house. (SOUF ¶ 4). Ms. Overman then told Ms. Graves that she and Plaintiff would return home soon. (SOUF ¶ 4). When Ms. Overman and Plaintiff arrived, Ms. Graves proceeded to tell Ms. Overman that she noticed the back door to the residence was unlocked and had thought about entering the residence to use the restroom before Ms. Overman returned. She, however, decided not to because she did not want to be a suspect if any property ended up missing. (SOUF ¶ 4).

During this initial report of the incident, on August 24, 2011, Ms. Overman believed the property was still missing and Defendant states that she never indicated any knowledge that Plaintiff had gained possession of the stolen items. (SOUF ¶ 4). In contrast, Plaintiff states that shortly after the report was made, Officer Danny Crownover arrived, and Plaintiff and Ms.

Overman both told the officer about the theft. Plaintiff and Ms. Overman both state that Ms. Overman directed Plaintiff to retrieve her missing jewelry. (Plaintiff Dec. 6, Overman Dec. 6). Ms. Overman states that Ms. Graves called Plaintiff Wednesday afternoon, after the report was made, trying to return the jewelry, and that Plaintiff met with Ms. Graves and retrieved the jewelry and returned it to Ms. Overman. Ms. Overman stares that she called the Sheriff's Department and told them the stolen property was returned and they informed her that it had to be brought in. (Overman Dec. 6).

On August 30, Ms. Overman took the jewelry in. (Overman Dec. 7). Defendant investigated the allegations made by Ms. Overman by interviewing Ms. Overman, Danny Kelly, and Virginia Kelly (Danny Kelly's mother) on August 30, 2011. (SOUF ¶ 5).

Danny Kelly recalled that on August 20, 2011, he and Ms. Graves went to Plaintiff and Ms. Overman's house. (SOUF ¶ 7). When they arrived, neither Plaintiff nor Ms. Overman were there so Ms. Graves called Plaintiff who indicated to her that he and Ms. Overman would be back soon. (SOUF ¶ 7). Plaintiff disputes this recollection of events and asserts that Defendant is twisting the facts to imply a conspiracy between Plaintiff and Ms. Graves. Plaintiff states that when the call happened, Ms. Overman was sitting right beside him and he immediately advised her that they needed to go home. (Plaintiff's Response to SOUF, Plaintiff's Dec. 3). Before they arrived, Ms. Graves entered Ms. Overman's house through an unlocked back door and then came back outside and waited for Plaintiff and Ms. Overman to return. (SOUF ¶ 7). After Plaintiff and Ms. Overman arrived, Ms. Graves and Mr. Kelly visited with them inside the residence for several hours. (SOUF ¶ 7). After visiting with Plaintiff and Ms. Overman, Ms. Graves and Mr. Kelly went to Mr. Kelly's mother's house. (SOUF ¶ 7). There, Ms. Graves showed Mr. Kelly and

his mother, Ms. Virginia Kelly, rings that she had stolen from the residence. She then attempted to sell the items to Ms. Kelly, who refused to buy them. (SOUF ¶ 7-8).

Virginia Kelly also provided Defendant her recollection of what happened. She indicated that on August 20, 2011, her son and Ms. Graves came to her house and Ms. Graves tried to sell her some jewelry which she had taken from "somebody's" house. (SOUF ¶ 8). Mrs. Kelly refused to buy the jewelry and asked Ms. Graves to leave. (SOUF ¶ 8). Ms. Graves got upset and left, leaving two stolen rings behind. (SOUF ¶ 8). Danny Kelly planned to take the rings to the police station the next day. (SOUF ¶ 8). According to Defendant, Ms. Graves stated that the next day, on August 21, Plaintiff and Ms. Graves came together to the Kelly residence and collected the two rings. (SOUF ¶ 8). Plaintiff told the Kellys that he was going to give the jewelry back to Ms. Overman. (SOUF ¶ 8). Mrs. Kelly asked Plaintiff to sign a document stating that he had taken possession of the property, but Plaintiff did not. (SOUF ¶ 8). Plaintiff disputes this recollection, maintaining that neither he nor Ms. Overman knew about the missing jewelry until Ms. Graves told them on August 24, 2011, and that same day officer Crownover came out, and Ms. Overman and Plaintiff reported the missing items together. (Plaintiff's Response to SOUF ¶ 8).

During Defendant's interview with Ms. Overman, Ms. Overman confirmed that after Mr. Kelly and Ms. Graves left her residence on August 20, 2011, several pieces of jewelry, two bottles of gin and some hydrocodone pills were missing. (SOUF ¶ 6). She also indicated to Defendant that sometime after she initially filed the report on August 24, 2011, Plaintiff had gained possession of the jewelry and returned the stolen items to her. (SOUF ¶ 6). While Defendant contends that Ms. Overman did not indicate that she had any knowledge that Plaintiff had obtained possession just one day after the items ended up missing and three days prior to her

making her initial report, (SOUF ¶ 6), Plaintiff maintains that Ms. Overman and himself found out about the theft at the same time, and Ms. Overman directed Plaintiff to go retrieve the stolen jewelry (Plaintiff's Response to SOUF).

According to Defendant, he attempted to interview Plaintiff about the situation, but Plaintiff refused to cooperate. (SOUF ¶ 9). Plaintiff disputes this and says that when Defendant called him and asked him to come to the station and give a statement, he advised Defendant that he was on crutches and that Defendant could come to him, which angered Defendant. (Plaintiff Dec. ¶9). Plaintiff said he had to wait to get a ride from his mother and so on September 1 or 2 she took him down to the station, but Defendant was on sick leave. (Plaintiff ¶¶. 9-10). He was arrested on September 14, 2011. (*Id.* ¶10).

Defendant states that he believed based on his interviews with the Kellys and based on Plaintiff's behavior that Plaintiff had conspired with Ms. Graves for the property to be stolen. (SOUF ¶ 10). Defendant says he based this belief on the fact that Plaintiff had made a call on August 21, 2011, to report a theft but he did not mention the theft of the jewelry or gin. (SOUF ¶ 3, 10). According to the Kellys, they gave the rings left by Ms. Graves to Plaintiff and Ms. Graves on August 21, 2011. (SOUF ¶ 8). While at the Kellys, Plaintiff refused to sign a document stating he had gained possession of the stolen property. (SOUF ¶ 8). When Ms. Overman reported the property stolen on August 24, 2011, Defendant believed she had no knowledge that Plaintiff had possession of the property and believed that the property remained missing. (SOUF ¶ 4). Defendant believed that it was only after Plaintiff learned that Ms. Overman contacted the Sheriff's Department that he gave the property back to Ms. Overman and that he did so in an effort to conceal the theft, hamper the investigation and avoid prosecution. (SOUF ¶ 10).

According to Plaintiff, there were many questions that Defendant did not ask Ms. Overman, and many assumptions made.

Defendant states that based on the facts as he understood them at the time, he requested an arrest warrant be issued for Plaintiff charging him with theft over $500 in violation of Tennessee Code Annotated § 39-14-103. (SOUF ¶ 11). The arrest warrant was issued on September 6, 2011 and Plaintiff was thereafter arrested on September 14, 2011. (SOUF ¶ 11).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgments. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477
U.S. at 252.

## III. ANALYSIS

A. Qualified Immunity

6

Defendant first argues that the Court should grant summary judgment as to count I of Plaintiff's Second Amended Complaint because Defendant is protected by qualified immunity.

### Qualified Immunity Generally

"Where any person acting under color of state law abridges rights secured by the Constitution or United States laws . . . § 1983 provides civil redress." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (citing 42 U.S.C. § 1983). "To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) a deprivation of a right secured under the Constitution or federal law; and (2) that a person acting under color of state law subjected him to the deprivation or caused him to be subjected to the alleged deprivation." *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003). Here, Plaintiff claims that Defendant, acting as an investigator for the Henderson County Sheriff's Department violated his rights to be (1) free from false arrest, (2) free from being stripped searched, and (3) free from malicious prosecution under the Fourth Amendment. Defendant argues that because he is protected by qualified immunity, he is entitled to summary judgment.

Under the doctrine of qualified immunity, "government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010). Qualified immunity is immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985). Once qualified immunity is raised, the plaintiff bears the burden to prove that the defendant is not entitled to it. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Qualified immunity is purely a question of law for the Court, and should be resolved as early in the case as possible. *Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir.1988).

In this case, during all times relevant, Defendant was acting within the scope of his duties as an investigator for the Henderson County Sheriff's Department. (Second Amended Complaint ¶ 4). Thus, he is protected by qualified immunity unless Plaintiff can prove that Defendant violated Plaintiff's "clearly established" constitutional rights.

To decide whether Defendant is entitled to qualified immunity at the summary judgment stage, the Court must engage in a two-step decisional process and consider: (1) whether the plaintiff has shown sufficient facts to make out a violation of a constitutional right; and (2) whether the constitutional right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Defendant does not dispute the second prong of this test, that Plaintiff's Fourth Amendment rights were clearly established at the time of the alleged misconduct, but asserts that based on the undisputed facts, Plaintiff cannot show that Defendant violated those rights.

Plaintiff's Claim for False Arrest

Defendant argues that Plaintiff's claim for false arrest must fail because Defendant had probable cause to issue the arrest warrant.

The Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). Therefore, if the officer had probable cause to make an arrest or have an arrest warrant issued, the Fourth Amendment has not been violated. The burden is on the plaintiff bringing a constitutional claim for false arrest under the Fourth Amendment to show probable cause for the arrest was lacking. *Provience v. City of Detroit*, 529 Fed. Appx. 661 (6th Cir.). Probable cause does not require the same type of specific evidence of each element of the offense as would be

needed to support a conviction. *Adams v. Williams,* 407 U.S. 143, 149 (1972). "Probable cause" exists if the "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003).

In a civil rights case, investigators are entitled to rely on a judicially-secured arrest warrant as satisfactory evidence of probable cause. *Yancey v. Carroll County*, 876 F.2d 1238, 1243 (6th Cir. 1989). In fact, a facially valid warrant usually serves as a complete defense to a false arrest claim. *See Baker v. McCollan*, 443 U.S. 137, 143-44 (1979). An officer, however, can be held liable under § 1983 even when a valid arrest warrant is issued if that officer knowingly makes false statements and omissions to the judge such that but for those falsities the judge would not have issued the warrant. *Vakilian*, 335 F.3d at 517.

To overcome an officer's entitlement to qualified immunity when an arrest warrant has been issued, a plaintiff must therefore establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause. *Id*. Stated otherwise, the plaintiff must show that the warrant would not have been issued without the allegedly false material information. Id.

In this case, Defendant had a facially valid arrest warrant issued for Plaintiff's arrest. Plaintiff alleges that Defendant deprived him of his Fourth Amendment rights when he had such arrest warrant issued. Therefore, in order for Plaintiff to assert his false arrest claim under § 1983, he must show (1) that Defendant deliberately or recklessly provided false information

or omitted information in obtaining the arrest warrant and (2) that without such false or omitted information, an arrest warrant would not have been issued.

In his Complaint, Plaintiff makes no allegation that Defendant made false statements which led to the issuance of the arrest warrant. (*See* Second Amended Complaint). Therefore, the only issue for the court to determine regarding Plaintiff's false arrest claim is whether Defendant intentionally or recklessly omitted material facts and whether such omission resulted in an arrest warrant being issued that would have otherwise not been issued.

Defendant argues that based upon the allegations set forth in Plaintiff's Second Amended Complaint, it appears Plaintiff believes that had Defendant disclosed (1) that Ms. Overman did not believe the Plaintiff had committed theft, (2) that Plaintiff himself had reported theft of his hydrocodone pills on August 21, 2011, and (3) that Shelia Graves (Holly Jo Graves' mother) visited Plaintiff several days later and told Plaintiff that Holly Jo Graves committed the theft, there would not have been a finding of probable cause and an arrest warrant would have never been issued. Defendant maintains that none of these facts would have changed the finding of probable cause.

The statute under which Defendant charged Plaintiff defines theft as follows:

> (a) A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent.

Tenn. Code Ann. § 39-14-103. Under the statute, Defendant points out, Plaintiff did not have to be the individual who initially took the property from Ms. Overman's possession to be charged with and/or convicted of theft. Nor did he have to be involved in the initial taking of the property. He merely had to intend to deprive Ms. Overman of the property and exercise control over the property without her effective consent. Defendant argues that what Ms. Overman

believed was not a material fact necessary for a finding of probable cause that Plaintiff had committed theft under the statute. Defendant urges the Court to consider that Ms. Overman had no idea Plaintiff had gained possession of the property on August 21, 2011, which only increased Defendant's suspicions that Plaintiff had violated the statute. Furthermore, Defendant asserts, the fact that Plaintiff reported a theft of hydrocodone pills but conspicuously failed to mention the missing jewelry only indicated that Plaintiff was attempting to conceal the felony theft of the jewelry. Lastly, Defendant argues that even assuming Defendant was aware of what Ms. Shelia Graves stated to Ms. Overman and the Plaintiff several days after the theft, it was of no consequence considering the fact that Plaintiff had gained possession of the property the day after the initial theft. Thus, none of the facts the Plaintiff claims were omitted would have altered the finding of probable cause.

Defendant argues that the undisputed facts are that at the time he issued the arrest warrant he understood (1) Plaintiff had the stolen jewelry in his possession on August 21, 2011, which he received from Ms. Graves, (2) Plaintiff accompanied Ms. Graves on August 21, 2011, when she retrieved two rings she left behind at the Kelly's residence, (3) Plaintiff refused to sign a document on August 21, 2011, showing that he had obtained possession of the jewelry, (4) Ms. <u>Overman reported the theft of the jewelry on August 24, 2011 and at that time did not know that</u> Plaintiff had obtained possession of the stolen jewelry three days previously, and (5) Plaintiff did not inform Ms. Overman nor return the stolen jewelry to Ms. Overman until after Ms. Overman reported the theft to the Sheriff's Department. Defendant also maintains he did not omit any material information when requesting the arrest warrant be issued for Plaintiff. (SOUF at 13).

However, according to Plaintiff, he and Ms. Overman learned of the theft at the same time and that he retrieved the jewelry at her direction. Plaintiff maintains that he never had possession of the jewelry without the owner's consent. There are conflicting reports on this material fact, and while Defendant says Plaintiff refused to cooperate and give his statement, Plaintiff maintains that not only did he and Ms. Overman discuss the case with Officer Crownover initially, but that Plaintiff went to the station to talk to Defendant but Defendant was out sick. Plaintiff also complains that Defendant diligently worded his affidavit to reflect a smidgen of probable cause, starving it of the facts that a judge would otherwise find deficient of probable cause. He failed to mention that the Plaintiff and victim were a live-in couple, which would have contextual value of proximity (i.e., victim and Plaintiff shared a phone and were privy to each other's conversation) as well as intent. He did not mention that three of the witnesses he interviewed all attested that Ms. Graves stole and tried to sell the stolen items. He also did not mention that the theft occurred while the victim and the Plaintiff were away from the home. Plaintiff argues that, most preposterously, the Defendant attempted to claim that Plaintiff and Ms. Graves tried to set up the alleged conspiracy over the phone in the presence of the victim.

In Defendant's Reply, Defendant argues that Plaintiff offers no factual basis to come to his conclusion that Defendant knew Plaintiff did not receive the stolen property until after August 24. Plaintiff, himself, admits that he did not discuss the case with Defendant, alleging that Defendant was on sick leave when he attempted to see him. (See D.E. 49 ¶ 9) Defendant also points out that Ms. Overman's written statement regarding the incident failed to mention any conversation with Ms. Graves whatsoever and seems to indicate that she was aware of the stolen jewelry on the date of the incident, which was August 20, 2011. (See D.E. 48-2).

12

Defendant asserts that Plaintiff simply cannot point the Court to any facts to base his conclusion that Defendant knew Plaintiff had accepted the jewelry on or after August 24, 2011, or that Plaintiff immediately returned the jewelry to Ms. Overman after accepting it. On the other hand, Defendant points the Court directly to his investigation to explain his belief at the time that Plaintiff accepted the stolen property on August 21, 2011 and did not intend on returning it to Ms. Overman. (Declaration of Thompson, D.E. 47-3 ¶ 10).

The Court notes that Ms. Overman's statement is quite short and does leave many questions. Ms. Graves statement is also fairly short and while it does indicate that Plaintiff and Ms. Graves picked up the jewelry together and that Plaintiff would not sign a sheet of paper, which arguably raise suspicion, it also indicates that Plaintiff had told Ms. Graves and Mr. Kelley to wait outside on the night of the incident, which would indicate that Plaintiff was not involved. Defendant reminds the Court that what matters is what the officer knew at the time he issued the arrest warrant, and Courts look at the question of whether there was "probable cause" through the lens "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). And "probable cause determinations involve an examination of all facts and circumstances within an officer's *knowledge at the time of an arrest*." *Id.* (emphasis added).

*Taylor v. Nichols*, 2006 U.S. Dist. LEXIS 76253 (W.D. Tenn. Oct. 4, 2006), relied on by Defendant, is distinguishable. In that case the officer made a direct observation about the suspect, albeit an incorrect one. *Rodriguez v. City of Cleveland*, 439 Fed. Appx. 433, 453 (6th Cir. Ohio 2011) is also distinguishable, as the suspect in that case offered explanation to law enforcement officers, which they then decided to not give credence to.

In contrast, in this case there were several questions raised by the witness statements, and Defendant did not speak with Plaintiff. There are disputed material issues of fact, including whether Plaintiff tried to give his statement to Defendant before the warrant was issued, as well as on what date Plaintiff discovered the jewelry was missing. Plaintiff points to the fact that Defendant did not ask Ms. Overman when Plaintiff learned about and took possession of the jewelry. Simply put, Defendant's theory of Plaintiff's involvement in the theft, and the facts this theory are based on, which would give him probable cause, rely on material facts in dispute. The relationship of Plaintiff to the victim, and their cohabitation and shared phone (which supports Plaintiff's assertion that Ms. Overman was not alone in reporting the theft but rather that she and Plaintiff were working together as co-victims) are material to what each knew when, and material to of whether there was "probable cause" through the lens "of a reasonable officer on the scene, particularly under the facts of this case where there was a known individual, Ms. Graves, who stole the items while Plaintiff and Ms. Overman were out of the house together and where the witness accounts indicate that Ms. Graves was told to wait outside until they arrived home. Additionally, Plaintiff points out that the only statements regarding Plaintiff in the affidavit are that Plaintiff gained possession of the stolen property and that he returned the property to the owner. In addition to Plaintiff's relationship with and co-habitation with the owner, Plaintiff states that all three witnesses and the thief's mother admitted that Ms. Graves took the jewelry, which was omitted. To survive the Motion for Summary Judgment Plaintiff must show that the warrant would not have been issued had this information been included, and the Magistrate Judge believes that Plaintiff has met this burden

<u>Plaintiff's Claim for an Unlawful Strip Search</u>

Plaintiff claims that because of the alleged unlawful arrest, he was subject to a strip

search in violation of his Fourth Amendment rights. (2d Am. Compl., D.E. 30 ¶ 14). Plaintiff does not allege that Defendant participated in the strip search. (D.E. 30). He also does not allege specific facts regarding the strip search, but simply states that he was subject to a strip search as "a result of being falsely arrested." (D.E. 30).

The Fourth Amendment guarantees "the [r]ight of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." To make a claim under § 1983 for an unlawful search, a plaintiff must demonstrate that the undisputed facts prove that the strip search deprived him of a constitutionally protected right, that the defendant is legally responsible for that deprivation, and that such deprivation was the proximate cause of his injury. *Fann v. Cleveland*, 6161 F. Supp. 305 (N.D. Ohio 1985); *See also, Graham v. Sequatchie County Gov't*, 2011 U.S. Dist. LEXIS 36286 (E.D. Tenn. Apr. 4, 2011).

Defendant states that in this case, he did not arrest Plaintiff, nor did he ever conduct a search on Plaintiff. Thus, he is not responsible for any deprivation of Plaintiff's rights as a result of any search and cannot be held liable for any such deprivation. The right to be free from unreasonable search and seizures is subject to a few specifically established and well delineated exceptions. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). One of those exceptions is where the search of a person is conducted incident to that person's arrest. *United States v. Robinson*, 414 U.S. 218 (1973). In a search incident to a lawful arrest, the officer may search for weapons and evidence so long as the arrest itself was valid. *Id*. at 235. Here, Plaintiff has not alleged the search itself caused him any injury or was unreasonable in and of itself. He simply alleges it was unlawful because the underlying arrest was unlawful. Defendant argues that even assuming Plaintiff may hold Defendant responsible for a search that he in no way

participated in, Plaintiff's claim must fail because false arrest claim fails. Defendant maintains that Mr. Thompson had probable cause to issue the arrest warrant, thus the search of Plaintiff by the arresting officer was conducted incident to Plaintiff's arrest and did not violate Plaintiff's Fourth Amendment rights.

The Magistrate Judge agrees with Defendant that summary judgment should be granted on this issue. Defendant did not conduct the search, did not participate in the search in any way, and Plaintiff has failed to allege injury. Because he has not demonstrated that the Defendant is legally responsible for the deprivation, that such deprivation was the proximate cause of his injury, nor has he actually alleged any injury, this claim must fail. The Magistrate Judge recommends that summary judgment be granted on this issue.

## Plaintiff's Claim for Malicious Prosecution

The elements of a malicious prosecution claim under § 1983 are: (1) a prosecution was initiated against the plaintiff and the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceeding apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010). A malicious prosecution claim fails when "there was probable cause to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).

Here, Defendant does not dispute that a prosecution was initiated against Plaintiff or that the prosecution was resolved in Plaintiff's favor. Defendant's sole argument is that he possessed probable cause to have the arrest warrant issued against Plaintiff, which was the only involvement he had in initiating a prosecution. Because the Magistrate Judge has not found that

Defendant had probable cause, and that is the only argument before the Court, the Magistrate Judge recommends that summary judgment be denied on this claim.

B. <u>State Law Claims</u>

<u>Malicious Prosecution Claim & Unlawful Arrest Claim</u>

Defendant admits that whether the underlying malicious prosecution was motivated by malicious motives is a question of fact. *Lewis v. Williams*, 618 S.W.2d 299, 303 (Tenn. 1981). In order to prevail the plaintiff must prove that the defendant acted with malice and without probable cause. *Brown v. SCOA Industries, Inc.*, 741 S.W.2d 916 (Tenn. Ct. App. 1987). False arrest claims under Tennessee law are based on allegations that the detention itself was unlawful because it was not done pursuant to proper process. *Sullivan v. Young*, 678 S.W.2d 906 (Tenn. Ct. App. 1984). Defendant again argues that there was probable cause in having an arrest warrant issued, and if the law enforcement officers had probable cause to believe that plaintiff committed a crime, or was in the process of committing a crime, then a plaintiff cannot establish that the arrest was unlawful. *Brown*, 741 S.W.2d at 920. At this stage of the proceedings, for the reasns set for above with regard to probable cause, the Magistrate Judge recommends that summary judgment be denied on these claims.

<u>Intentional Infliction of Emotional Distress Claim</u>

The Tennessee Supreme Court has determined that claims for intentional infliction of emotional distress are viable only upon a showing of truly outrageous and intolerable conduct. *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999). Although no perfect legal standard exists for determining whether particular conduct is so intolerable as to be tortious, the Tennessee Supreme Court has adopted and applied the high threshold standard described in the Restatement (Second) of Torts:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Johnson v. Smith-Johnson*, 2014 U.S. Dist. LEXIS 91003, 17-19, (M.D. Tenn. July 3, 2014); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "[I]t is the court's duty in the first instance to apply that standard and determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[.]" *Id*. Defendant argues that having an arrest warrant issued based on the knowledge Defendant possessed at the time is not outrageous conduct. Defendant argues that he acted as any reasonable officer would. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir. 1986). Here, there remain many material issues of fact, and the Magistrate Judge recommends that summary judgment be denied on this issue.

Respectfully submitted this 23rd day of February, 2015,

<u>s/Edward G. Bryant</u>
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATIONS MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATIONS. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**